**Brugger v. Brugger**

84

C.P. of Berks County, no. 02-6838.

*David S. Sobotka,* for plaintiff.
*Bernard Mendelsohn,* for defendant.

GRIM, *J.,* February 3, 2004—The matter before the court is a custody dispute involving Father's request to modify his periods of partial physical custody. The following are the pertinent facts and procedural history.

The parties share legal custody of their four children: Will (date of birth July 28, 1992), Ross (September 29, 1993), Graham (December 29, 1994), and Brett (December 29, 1994). Plaintiff, Deborah A. Brugger (Mother) has primary physical custody of the children. Defendant, Robert Brugger (Father), has partial physical custody of the children.

The parties have been abiding by a June 2003, custody order which provides Father, inter alia, with partial physical custody of the children every Saturday from 6 p.m. until Sunday at 6:30 p.m. On alternate Sundays, Father takes the children to 9 a.m. mass. Father also has custody of all the children on Tuesday from 6 p.m. to 8 p.m. and has custody on a rotating basis of one child on Wednesdays from 6 p.m. to 8 p.m. In summer, Father's Tuesday evening custodial periods extend until Wednesday evenings at 8 p.m.

This order further provided that a party could request a relisting before the custody master without the filing of a petition if the request was made within six months from the date of the order. Father requested and received a relisting and subsequently filed exceptions to the recommended order.

Mother and the children reside in the former marital residence in Topton, Pennsylvania. Following the separation, Father initially lived with his grown daughter and her children in their residence in Bethlehem, Pennsylvania. To be closer to his minor children, Father shared a residence with another man in Topton. This arrangement failed because the man did not like children so Father returned to his daughter's residence. This past summer, Father moved into an apartment in Topton that is less than two blocks from Mother's residence.

For nine years prior to the parties' separation, Father did not work outside the home in order to care for the children. He worked as a realtor during this period. Father now works as a salesperson in Emmaus, Pennsylvania. He works Monday through Saturday beginning at 9 a.m. On Thursdays he works until 8:30 p.m. and on Saturdays he works until 5:30 p.m. The other days he usually works until 6:30 p.m.

For approximately 25 or 26 years, Mother has been the nursing and personnel supervisor at a doctors' office. She works from 8 a.m. to 3 p.m. Monday through Friday. On some Fridays she works until 5 p.m.

All children are involved in scouting activities. Will's troop meets on Tuesdays. Father wants to become actively involved with scouting but he cannot attend the meetings because he has custody of the other children on Tuesdays. Therefore, he wants his weekly custodial period to be changed to Monday or Wednesday and he wants to have all the children overnight on that day.

Father also wants to have overnight visitation with the individual child. He strongly believes that individual time is important for each child.

The children attend school in Emmaus. Father works approximately one mile from the school. If he were to have the children overnight, he could take them either to Mother's residence in time to board the school bus or directly to school. He is willing to take the children to their activities that occur during his custodial periods.

The third change which Father requests is that he have all the children for one week of vacation during the summer so that they can do something together, such as camping. He also wants to have each child for one week during the summer so that he can spend quality time with each child. He would have the children's usual babysitter watch the child while he was at work during the day.

Father complains that Mother is inflexible and will not deviate from the custody order. He asked 34 times for different children and received them only twice. Mother contends that Father shows favoritism by asking for custody of Will more than the other boys. Father testified that he may have asked for custody of Will more because he had wanted to do scouting activities with him

and Will is the only child who is a scout. The others are cub scouts. Father accommodated Mother's requests to care for the children three out of four times.

Mother does not want the custody schedule to change. She believes that the present schedule works fine. Mother complains, however, that she does not always have a telephone number to contact the children when they are in Father's custody. Father takes the children places without notifying her.

Mother does not want the children to stay overnight at Father's residence during the school year. At her residence, the children's bedtime is 9 p.m. She believes Father is more lenient and allows them to stay up later. She also thinks that it would be too hectic for Father to get the children ready on time for school because he would have to oversee the children's homework, have clean uniforms ready for them, and prepare breakfast for them.

All four children want to spend more time with Father. They enjoy their time alone with him. All the children, except Ross, play chess with Father who taught them how to play. The children wish to be able to see Father beyond the times allotted on the custody order.

The children have been in therapy since October 2002, for issues surrounding their parents' divorce. All of the children told the therapist that they desire to spend more time with Father. The children want more freedom to see Father during the week since he lives so close to them. The therapist believes that flexibility in the custody schedule would be good for them, especially since the two residences are so close in proximity.

The therapist believed that Father wanted to spend more time with Will than he did with the other boys. She wrote that this favoritism elicits resentment from the other children and appears to increase Will's already present

symptomology. Will's maladaptive behavior includes aggression towards siblings and Mother and overt defiance. Will also exhibits depression with anxiety features. (Plaintiff's exhibit no. 1.)

The paramount concern in a child custody case is the child's best interests, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. *Bovard v. Baker,* 775 A.2d 835 (Pa. Super. 2001).

In the case sub judice, it is apparent that both parties love their children and want to be an important influence in their lives. A strong public policy exists against limiting the relationship between a parent and a child. Visitation should be limited or denied only if the parent has been found to possess such severe mental or moral deficiencies as to constitute a grave threat to the child's welfare. *Nancy E.M. v. Kenneth D.M.,* 316 Pa. Super. 351, 462 A.2d 1386 (1983).

Nothing was presented to suggest that Father's time with the children should be limited. He should be able to spend more time with them. If his work schedule would be a typical one, he would have, at the bare minimum, alternate weekends.

It is well established that the strength of a child's relationship with each parent is a critical factor in custody determinations. *Mahoney v. Mahoney,* 354 Pa. Super. 585, 512 A.2d 694 (1986). These children love Father and want to spend more time with him.

Mother has done a great job in raising these children since the parties' separation. However, these children need their father in their lives. He, too, has strengths to offer them. For these reasons, the court will award Father additional time with the children.

The parties must also learn to communicate with each other. Therefore, the court will order them to participate in mediation. The court, too, wants the parties to learn to be flexible and accommodate these children's needs. The parties live within walking distance of each other. If one child wants to go to the noncustodial parent's home, it should not be hard to grant his request. Children will flourish better in an environment that, if not friendly, is at least civil.

All of the children are aware of the parties' hostility towards each other. The children, especially Will and Ross, are affected by it and are especially needful of therapy. If the antagonism continues, the younger children, too, will become victims of the fallout of their parents' divorce.

In accordance with the foregoing opinion, the court enters the following order.

## ORDER

And now, February 3, 2004, it is hereby ordered and decreed as follows:

(1) The parties shall share legal custody of the minor children, Will Brugger, date of birth July 28, 1992; Ross Brugger, date of birth September 29, 1993; Graham Brugger, date of birth December 29, 1994; and Brett Brugger, date of birth December 29, 1994.

(2) Mother shall have primary physical custody of the minor children.

(3) Father shall have partial physical custody of the minor children on a four-week cycle for the first three Saturday evenings of the cycle from 6 p.m. until Sunday evenings at 6:30 p.m. Mother shall have custody on the

fourth week of the cycle. This cycle shall follow Father's pay periods.

(4) On alternating Sundays, Father shall deliver the children to St. Ann's Roman Catholic Church in Emmaus, Pennsylvania, for 9 a.m. mass.

(5) Father shall have physical custody of all four children on Wednesday evenings from 6 p.m. until Thursday morning. Upon reasonable advance notice to Mother (at least 48 hours), Father shall be permitted to commence his periods of weeknight physical custody at an earlier time. Father shall notify Mother prior to the start of his custodial period if he plans to take the children directly to school or return them to her on Thursday in time for the children to board the school bus. This visitation shall continue in the summer. Father shall return the children on Thursday morning to the children's babysitter or Mother's residence.

(6) Each week during the school year, Father shall have physical custody of one of the children on a rotating basis from oldest child to youngest child. This custodial period shall occur on either Monday or Tuesday to accommodate the particular child's schedule. The custodial period shall begin at 6 p.m. on Monday or Tuesday and shall extend to the following morning at which time Father shall transport the child directly to school or to Mother's residence in time to board the school bus. Father shall notify Mother prior to the start of his custodial period of his intention.

(7) Unless otherwise agreed upon by the parties, Father shall have the right to one uninterrupted week of vacation during the children's summer vacation from school with the four minor children. Father shall pro-

vide Mother with his choice of vacation week by May 1st of each year. In the event of a conflict with Mother's vacation plans, Mother's choice shall take priority in even-numbered years, and Father's choice shall take priority in the odd-numbered years.

(8) Unless otherwise agreed upon by the parties, Father shall have the right of physical custody of one of the children on a rotating basis from oldest child to youngest child during one week in summer.

(9) Father's overnights with the children shall be spent at Father's home unless Father provides Mother with an address/phone number where he and the children can be reached on overnights away from his residence in advance of the overnight at another location.

(10) Notwithstanding the foregoing, Mother shall have physical custody of the minor children on Mother's Day and Father shall have physical custody on Father's Day each year. Custody shall be from 9 a.m. until 7 p.m.

(11) The parties shall alternate physical custody of the four minor children on Easter, Memorial Day, July Fourth, Labor Day, and Thanksgiving holidays. Custody for the holidays shall be from 10 a.m. until 7 p.m. Father shall have physical custody of the four minor children for the Easter holiday in 2004 and the parties shall alternate the holidays thereafter.

(12) In odd-numbered years, Father shall have physical custody of the minor four children from 12 noon on December 24th until 12 noon on December 25th and from 3 p.m. on December 31st until 7 p.m. on New Year's Day. Mother shall have physical custody of the four minor children from 12 noon on December 25th until 8 p.m. on December 26th. In the even-numbered years,

Mother shall have physical custody of the four minor children from 12 noon on December 24th until 12 noon on December 25th and from 3 p.m. on December 31st until 7 p.m. on New Year's Day. Father shall have physical custody of the four minor children from 12 noon on December 25th until 8 p.m. on December 26th.

(13) Unless otherwise agreed upon, Dr. Edward Hanna is appointed mediator/arbitrator to resolve any conflicts which arise between the parties regarding the minor children. If, after mediation, a resolution cannot be reached, the decision of the mediator/arbitrator is final except that each party shall always have recourse to petition the court to determine the child's best interests in the event he or she believes that the arbitrator's decision is *clearly* not in the child's best interest. If the court finds that recourse to the court was unreasonable, then counsel fees shall be awarded against that party. Father shall pay 50 percent and Mother shall pay 50 percent of the cost of mediation/arbitration unless the mediator/arbitrator believes that a party was unreasonable, in which case the court may assess the costs against one or the other party in a different proportion.

(14) If any party is unavailable during his or her custodial period, then the other party shall have the right to have custody of the children during that party's absence.

(15) Neither party shall disparage or denigrate the other parent in the presence of the children nor permit others to do so. Each parent will try to encourage the development of the parent-child relationship between each child and each parent.

(16) The attached appendix [not published herein] is hereby made a part of the within order.